UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| KIMBERLY J. COOK,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　Defendant. | NO.  C15-792-BJR-JPD<br><br><br>REPORT AND RECOMMENDATION |

Plaintiff Kimberly J. Cook appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings.

## I.　　FACTS AND PROCEDURAL HISTORY

Plaintiff is a 52-year-old woman with a high school diploma and an associate's degree. Administrative Record ("AR") at 37-38.  Her past work experience includes employment as a paraeducator, an administrative assistant, and a customer service representative.  AR at 195, 220.  Plaintiff continued to work part-time as a substitute administrative assistant at the time of

REPORT AND RECOMMENDATION - 1

the administrative hearing.  AR at 42.

On January 3, 2012, Plaintiff protectively filed an application for DIB, alleging an onset date of June 9, 2011.  AR at 66, 157-63.  Plaintiff asserts that she is disabled due to rheumatoid arthritis, depression, fibromyalgia, colitis, sarcoid, and scoliosis.  AR at 194.

The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 97-99, 104-08.  Plaintiff requested a hearing, which took place on August 16, 2013.  AR at 33-65.  On August 23, 2013, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on her finding that Plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 13-27.  Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-7, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On May 20, 2015, Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 1.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in

REPORT AND RECOMMENDATION - 2

medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. Cook bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the

REPORT AND RECOMMENDATION - 3

national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If she is, disability benefits are denied. If she is not, the Commissioner proceeds to step two. At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities. If the claimant does not have such impairments, she is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

to determine whether she can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V. DECISION BELOW

On August 23, 2013, the ALJ found:

1. The claimant meets the insured status requirements of the Act through December 31, 2016.

2. The claimant has not engaged in substantial gainful activity since June 9, 2011, the alleged onset date.

3. The claimant's sarcoidosis, rheumatoid arthritis, sleep apnea, colitis, gastritis, osteoarthritis, and headaches are severe.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. The claimant has the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except she can occasionally climb and balance. She can never climb ropes, ladders, or scaffolds. She must avoid concentrated exposure to extreme cold and fumes, odors, dusts, and gases. She must avoid concentrated exposure to vibrations and hazards such as machinery and heights. She cannot work on uneven surfaces. She is limited to unskilled work with simple, routine tasks. She can only have occasional superficial interaction with the general public. She would be off task up to 5 percent of the time.

6. The claimant is unable to perform any past relevant work.

7. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.

REPORT AND RECOMMENDATION - 5

8. The claimant has not been under a disability, as defined in the Act, from June 9, 2011, through the date of this decision.

AR at 15-26.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erred in failing to find Plaintiff's mental impairments and fibromyalgia to be severe at step two;

2. Whether the ALJ erred in discounting Plaintiff's credibility[2];

3. Whether the ALJ erred in assessing certain medical opinions; and

4. Whether the ALJ erred in discounting lay statements.

Dkt. 10 at 1.

## VII. DISCUSSION

A. <u>The ALJ Erred in Evaluating Plaintiff's Mental Impairments.</u>

Plaintiff argues that the ALJ erred in failing to discuss her alleged mental impairments at step two. A full analysis of this assignment of error requires assessing whether the ALJ erred in discounting Plaintiff's credibility and two medical opinions regarding her mental limitations, and thus the Court will address these issues together.

1. *Legal Standards*

   a. <u>Step Two</u>

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§

---

[2] This assignment of error envelops Plaintiff's argument that the ALJ erred in evaluating her medication side effects, because the evidence related to the side effects is based on her subjective reports. *See* Dkt. 10 at 6.

REPORT AND RECOMMENDATION - 6

404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (Jan. 1, 1985)). In order to be found medically determinable, a mental or physical impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques, and established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20 C.F.R. §§ 404.1508, 416.908.

          b.     <u>Credibility</u>

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p, 1996 WL 374186. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988). Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

        c.    <u>Medical Opinions</u>

As a matter of law, more weight is given to a treating physician's opinion than to that of a non- treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

REPORT AND RECOMMENDATION - 8

2. *The ALJ's Evaluation of Plaintiff's Mental Impairments*

The ALJ did not identify any particular mental impairments at step two, but assessed the severity of Plaintiff's "mental impairment" at step three, and found that the impairment did not satisfy the "paragraph B" or "paragraph C" criteria of Listing 12.04. AR at 17-18. The Commissioner does not directly dispute that the ALJ erred in failing to identify any specific mental impairment at step two, but argues that any error is harmless because the ALJ did not deny Plaintiff's claim at step two. Dkt. 11 at 3.

A step-two error can be harmless if the ALJ considers all of the limitations caused by the omitted impairments when assessing the claimant's RFC. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). The ALJ explained why she did not find Plaintiff's alleged mental limitations to be credible, and why she rejected medical opinions regarding Plaintiff's mental limitations. For the reasons explained below, the ALJ's findings in this regard were erroneous, and thus the ALJ did not cure the step-two error.

    a.    <u>Credibility</u>

The ALJ found that Plaintiff's limited treatment for her mental impairments undermined her allegations of severe limitations. AR at 22-23. Specifically, the ALJ found that Plaintiff seldom visited her treating psychiatrist and did not seek out additional counseling or therapy. AR at 22-23. Plaintiff's records indicate that she first began treatment with her psychiatrist in 2005, and visited her thirteen times between April 2010 and May 2012. AR at 737-50, 754. It is not clear why the ALJ would expect that Plaintiff would seek out additional counseling and therapy, and this reason fails to meet the clear and convincing standard.

The ALJ also references "objective medical evidence," in finding that Plaintiff retained the RFC as described by the ALJ. AR at 23. The ALJ's decision also summarizes evidence related to Plaintiff's daily activities that the ALJ posits supports the RFC assessment, but these

REPORT AND RECOMMENDATION - 9

1  summaries do not amount to a clear and convincing reason to discount Plaintiff's credibility

2  because the ALJ did not explain which evidence contradicted which portions of Plaintiff's

3  statements. AR at 20-23; *Brown-Hunter v. Colvin*, 798 F.3d 749, 757 (9th Cir. 2015). Thus, to

4  the extent that this reasoning was intended to constitute a portion of the credibility findings, it

5  fails to satisfy the Ninth Circuit's standard.

6  The ALJ also discounted the overall credibility of Plaintiff's subjective statements due

7  to inconsistencies. AR at 23-24. Specifically, the ALJ noted that Plaintiff attempted to return

8  to work after she was terminated due to absenteeism caused by illness, and only applied for

9  benefits after her employer "refused to hire her back in the same capacity as before." AR at

10  23. The factual basis for the ALJ's speculative finding is not clear. The record shows that

11  after Plaintiff was terminated, she was offered a substitute position that she had continued to

12  fill approximately one day per week. AR at 55-59. The evidence cited by the ALJ (AR at 23)

13  as showing that Plaintiff's physicians believed she could work after her alleged onset date

14  relates to injuries caused by a motor vehicle accident: Plaintiff's physician indicated that there

15  was no "specific residual limitation from the injury[,]" but this evidence does not address

16  Plaintiff's overall condition. AR at 773. The ALJ's reasoning in this regard does not

17  accurately reflect the record and is not a clear and convincing reason to discount Plaintiff's

18  credibility.

19  The ALJ also found that Plaintiff exaggerated her symptoms during an examination by

20  Steven Overman, M.D., reporting "great sensitivity to even light tou[c]h." AR at 23-24

21  (referencing AR at 1053). The ALJ found that no other provider mentioned this sensitivity,

22  and that it is contradicted by Plaintiff's ability to "stand and ambulate with little difficulty

23  during the examination." AR at 24. The ALJ is mistaken: another provider noted Plaintiff's

24  allodynia. *See* AR at 863. Furthermore, it is not clear why sensitivity to touch would be

REPORT AND RECOMMENDATION - 10

inconsistent with standing and ambulating; Dr. Overman himself noted that Plaintiff "stands and move about easily[.]" AR at 1053. Accordingly, the ALJ's reasoning with regard to Dr. Overman's finding of sensitivity is not a clear and convincing reason to discount Plaintiff's credibility.

### b.    Dr. Warner's Opinion

The ALJ gave little weight to the opinion of Plaintiff's treating psychiatrist, Elizabeth Warner, M.D., because Dr. Warner did not indicate any particular functional limitations that would preclude Plaintiff from working. AR at 25 (referencing AR at 754-55). But Dr. Warner specifically mentioned limitations in Plaintiff's ability to sustain a full-time work schedule and her problems concentrating while reading for longer than 15 minutes at a time. AR at 755. While much of Dr. Warner's letter does not identify specific functional limitations, the ALJ erred in failing to either account for or discount the limitations Dr. Warner did identify.

### c.    Dr. Griffin's Opinion

The ALJ also discounted the opinion of consultative psychologist Enid Griffin, Psy.D., finding it to be inconsistent with Plaintiff's ability to "socialize adequately and maintain concentration throughout [Dr. Griffin's] interview." AR at 24. The ALJ theorized that Dr. Griffin based her findings upon Plaintiff's subjective reporting, which lacked credibility. *Id*. The ALJ also rejected Dr. Griffin's opinion that Plaintiff would likely "not be able to engage in full-time employment until her symptoms have decreased" (AR at 759) as pertaining to an issue reserved to the Commissioner. AR at 24.

It is not clear why Dr. Griffin's opinion would be undermined by evidence showing that Plaintiff could socialize adequately or maintain concentration, because Dr. Griffin did not opine that Plaintiff had either social or concentration deficits. Instead, Dr. Griffin found that Plaintiff had deficits in the ability to reason and adapt (AR at 759), which is consistent with Dr.

REPORT AND RECOMMENDATION - 11

Griffin's mental status examination findings that Plaintiff had impaired insight/judgment and lacked effective problem-solving skills (AR at 758).  The ALJ merely speculated that Dr. Griffin's opinion depended on Plaintiff's subjective reporting, overlooking the abnormal mental status examination findings that support Dr. Griffin's conclusions.  Even if the ALJ is correct that Dr. Griffin's opinion regarding Plaintiff's ability to engage in full-time employment addresses an issue reserved to the Commissioner, the ALJ nonetheless erred in failing to account for the reasoning and adaptation deficits identified by Dr. Griffin.

Because the ALJ erred in assessing Plaintiff's credibility as well as the medical opinions related to Plaintiff's mental functioning, the multiple errors in the ALJ's decision must be corrected on remand.  The ALJ shall reconsider Plaintiff's mental conditions at steps two and three, and assess whether her impairments are medically determinable and severe.  In assessing Plaintiff's RFC on remand, the ALJ shall reconsider Plaintiff's credibility[3] and the opinions of Drs. Warner and Griffin.

B.   The ALJ Did Not Err in Evaluating Plaintiff's Fibromyalgia.

Plaintiff also argues that the ALJ erred in finding that her fibromyalgia was not medically determinable, due to the lack of a well-supported diagnosis in the record.  AR at 16. The record contains references to fibromyalgia (*see, e.g.*, AR at 410, 706, 761, 788, 805, 863, 928, 934), but the only firm diagnosis was rendered by Dr. Overman, an examining physician, who did not describe diagnostic criteria consistent with those required by agency regulations. *See* AR at 1053-54; SSR 12-2p, 2012 WL 3104869 (Jul. 25, 2012).  A bare diagnosis alone is not sufficient to establish that fibromyalgia is a medically determinable impairment. *See* SSR 12-2p, 2012 WL 3104869, at *2 ("We cannot rely on the physician's diagnosis alone. . . . We

---

[3] The ALJ's reconsideration of Plaintiff's credibility will envelop reconsideration of her statements regarding medication side effects. *See* 20 C.F.R. §§ 404.1529(c)(3) & 416.929(c)(3); SSR 96-7p, 1996 WL 374186.

REPORT AND RECOMMENDATION - 12

will review the physician's treatment notes to see if they are consistent with the diagnosis of [fibromyalgia] . . .). Neither Dr. Overman's report nor any of the other treatment notes referencing fibromyalgia contains the type of findings required by SSR 12-2p, and thus the ALJ did not err in finding that fibromyalgia was not a medically determinable impairment at step two.[4]

C. The ALJ Shall Reconsider Dr. Overman's Opinion on Remand.

Dr. Overman examined Plaintiff in July 2013, at the request of Plaintiff's attorney. AR at 1052-54. Dr. Overman concluded that Plaintiff's medical diagnoses "create an impossibility for her to sustain any gainful work[.]" AR at 1054. The ALJ discounted Dr. Overman's opinion because some of the conditions he listed were "mild or mostly resolved with medications[,]" or did not meet the 12-month durational requirement (such as appendicitis or pneumonia). AR at 24. The ALJ also found that Dr. Overman's opinion that Plaintiff could not sustain *any* gainful work was undermined by Plaintiff's ability to continue working on a part-time basis. *Id*.

It is not clear which conditions the ALJ believed were mild or mostly resolved with medications, and thus this reasoning is not specific. As to the twelve-month durational requirement: Dr. Overman did not opine that appendicitis or pneumonia prevented Plaintiff from working, but he did indicate that Plaintiff had "[m]ultiple medical complications" that required hospitalization, some of which require recurrent evaluations. AR at 1054. The ALJ's reasoning, finding Dr. Overman's opinion to be based on conditions that do not satisfy the durational requirement, is not legitimate. In light of these errors, the ALJ shall reconsider Dr.

---

[4] To the extent that Plaintiff also argues that the ALJ erred in assessing pain symptoms caused by her fibromyalgia, she has not established error because the ALJ is only required to consider symptoms caused by medically determinable impairments. *See* 20 C.F.R. § 404.1529(b).

REPORT AND RECOMMENDATION - 13

Overman's opinion on remand.

D.  <u>The ALJ Erred in Assessing Lay Statements.</u>

The ALJ referenced letters written by Plaintiff's family and friends, and provided two reasons to discount the lay statements as a whole. AR at 25 (referencing AR at 255-64). Lay witness testimony regarding a claimant's symptoms or how an impairment affects his or her ability to work is competent evidence, and cannot be disregarded without comment. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). If an ALJ chooses to discount testimony of a lay witness, he must provide "reasons that are germane to each witness," and may not simply categorically discredit the testimony. *Dodrill,* 12 F.3d at 919.

First, the ALJ noted that the lay witnesses were "not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms" and, as a result, "the accuracy of their statements is questionable." AR at 25. This reason is not germane, because lay evidence is categorically competent evidence and may not be discounted simply as lay evidence. The Commissioner's brief does not defend this rationale. Dkt. 11 at 13.

Second, the ALJ stated that the lay statements, "like the claimant's, are simply not consistent with the preponderance of the opinions and observations by medical doctors in this case." AR at 25. The ALJ does not identify any particular opinion or treatment evidence that is inconsistent with any particular part of the lay statements. Without more specific findings, the Court cannot find that the ALJ's rationale is germane. On remand, the ALJ shall reconsider the lay statements.

VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

REPORT AND RECOMMENDATION - 14

instructions. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **December 31, 2015**. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 4, 2016**.

This Report and Recommendation is not an appealable order. Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 17th day of December, 2015.

*James P. Donohue*
JAMES P. DONOHUE
Chief United States Magistrate Judge